IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

G.E.R.,1

                Plaintiff,

Vs.                                                                        No. 21-1223-SAC

KILOLO KRJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant G.E.R.'s Title II application for disability insurance benefits. The matter has been fully briefed by the parties and, therefore, is ripe for ruling.

**STANDARD OF REVIEW**

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See *Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically

---

1 The use of initials is to preserve privacy interests.

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). This standard of review is set forth in 42 U.S.C. § 405(g) and provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The Supreme Court recently summarized the relevant holdings behind this standard:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g., Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestak v. Berryhill*, ---U.S.---, 139 S.Ct. 1148, 1154 (2019). In using this standard, a court examines the whole record, including whatever in the record fairly detracts from the weight of the Commissioner's decision, and decides whether substantial evidence supports the decision. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). A court, however, may not reverse the Commissioner's choice between two reasonable but conflicting views, even if the court would have chosen differently assuming a *de*

*novo* review. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The court reviews "only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

**PROCEDURAL BACKGROUND**

Before filing his current application, G.E.R. had filed two prior applications for disability with each dismissed by the administrative law judge ("ALJ") for failure to appear (2014 and 2017). On March 29, 2019, G.E.R. filed his initial claim of disability alleging inability to work as of October 10, 2014, due to "Depression, Anxiety, and P.O.T.S. Heart Condition." ECF# 8-4, p. 13. According to the John Hopkins website, POTS or postural orthostatic tachycardia syndrome is a "blood circulation disorder" characterized by a heart rate that increases by at least 30 beats per minute with moving from horizontal to standing. John Hopkins Medicine, [https://www.hopkinsmedicine.org/health/conditions-and-diseases/postural-orthostatic-tachycardia-syndrome-pots](https://www.hopkinsmedicine.org/health/conditions-and-diseases/postural-orthostatic-tachycardia-syndrome-pots) (last visited on March 17, 2021). POTS symptoms "include but are not limited to lightheadedness (occasionally with fainting), difficulty thinking and concentrating (brain fog), fatigue, intolerance of exercise, headache, blurry vision, palpitations, tremor and nausea." *Id*. His application was denied initially and on reconsideration, and his hearing before the ALJ was held telephonically by agreement due to the circumstances of COVID. After the hearing, the medical experts, William Biles, M.D. and Allison Podczerwinsky, Psy. D., answered medical interrogatories submitted by the ALJ. The claimant did not object and

proffered no responses to the medical experts.

The ALJ determined that "[t]hrough the date last insured, the claimant had the following medically determinable impairments: atrial fibrillation, degenerative disc disease (DDD), depression, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD)." ECF# 8-3, p. 15. At step two, the ALJ found no impairment or combination of impairments "that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe or combination of impairments." *Id*. at p. 16. Thus, the ALJ in her decision on May 11, 2021, concluded that G.E.R. was not disabled through June 30, 2019, the last date insured. The Appeals Council denied G.E.R.'s request for review. Thus, the ALJ's decision stands as the Commissioner's final decision for purposes of judicial review.

**ISSUE ON APPEAL**

The claimant's narrow issue on appeal is that the ALJ's step two findings are not supported by substantial evidence in that they fail to consider whether the claimant's vertigo or benign paroxysmal positional vertigo (jointly referred to hereafter as "vertigo") are medically determinable impairments and whether these impairments are severe on their own or in combination with other impairments. Specifically, the claimant faults the ALJ's narrative assessment for not addressing Dr. Rivera's 2015 diagnosis of vertigo and for not explaining the omission of this as a medically determinable impairment. As for the ALJ's implied finding that vertigo was

not a medically determinable severe impairment, the claimant argues the record lacks substantial evidence to support this finding.

**SUMMARY OF RELEVANT EVIDENCE**

This summary will focus on the evidence relevant to the G.E.R.'s argued issue on appeal. At the hearing on March 22, 2021, G.E.R. testified as to his physical disabilities and included that he experienced his POTS symptoms a few times each month. ECF# 8-3, pp. 59-60. He also described getting dizzy if he lifted things while standing up and becoming dizzy in this way two to three times a month. *Id*. at p. 62.

G.E.R. was seen by his primary care physician, Darla Rivera, D.O. in November of 2015, for the complaints of becoming so dizzy that he had fallen twice in recent days. ECF# 8-8, p. 72. Under the title of assessment and plan, Rivera recorded "dizziness and giddiness" and provided the following care instructions: "Benign Paroxysmal Positional Vertigo (BPPV): Care Instructions; Cawthorne Exercises for Vertigo: Care Instructions; Epley Maneuver for Vertigo: Exercises; Vertigo: Care instructions." *Id*. at p. 73.

The medical records do not show claimant returning to Dr. Rivera for these symptoms for more than three years. In September of 2017, G.E.R. went to Dr. Rivera asking for a medication refill and telling her that he had filed for disability. *Id*. at p. 65. Records from this visit do not mention vertigo. In October of 2018, he saw Dr. Rivera for a medication change and refill. *Id*. at 60. No reference to vertigo is found in those records. In December of 2018, G.E.R. returned to Dr. Rivera

complaining that he had fainted at home and had experienced three or more episodes of dizziness or being light-headed. *Id.* at p. 52. His prescription for nitroglycerin was renewed. Notes from the visit reflecting that he had reported drinking daily 35 cups of coffee but had no problems until abruptly stopping coffee/caffeine three days ago. *Id.* at p. 54. Dr. Rivera's notes from this visit do include "vertigo," but they do not discuss any summary of associated symptoms, any treatment plan or prescribed medication, and any medical evidence in support of a diagnosis.

A few days later, he went to COMCARE of Sedgwick County after experiencing what he thought was a mild heart attack based on his chest hurting and fainting spells. *Id.* at 8. He had contacted his primary care physician who directed him "to COMCARE, as some of his symptoms appear to be mental-health related." *Id.* He described his caffeine use as drinking "a lot of coffee" as much "as 35 cups of coffee on any given day." *Id.* at p. 9. Based on the initial evaluation by Tawny Voyles, LMLP, G.E.R. was referred for a medication evaluation on January 8, 2019. *Id.* at p. 13.

On January 8, 2019, Dr. Andrew Lauronilla saw G.E.R. for psychiatric medication evaluation and management. *Id.* at p. 20. Under G.E.R.'s history, it was recorded he had fallen down when standing up to go to his girlfriend's house. He recounted that his blood pressure drops when he stands up and "then this has been happening more often lately" and that "when this happens, 'I get dizzy.'" *Id.* Dr. Lauronilla discussed "postural hypertension and potential side effect from quetiapine causing hypertension" and had G.E.R. agree on reducing his use of quetiapine and

6

observing whether his dizziness continued. *Id.* at p. 23. Dr. Lauronilla also noted plans for stopping quetiapine and switching to a different medication that did not cause hypertension. *Id.*

On February 21, 2019, G.E.R. saw Monica Morales, APRN, at COMCARE on a follow-up appointment. *Id.* at p. 24. He reported being "relatively stable" and feeling better. *Id.* On March 27, 2019, G.E.R. returned to COMCARE for a medication management follow-up with the psychiatrist German Gonzalez. *Id.* at p. 27. G.E.R. reported "being relatively stable" after his last appointment and feeling better. *Id.* Because of his abnormal lipid panel, Dr. Gonzalez recommended tapering off Seroquel and starting Latuda. *Id.* at 28. As for recommendations, medication was continued with a fair prognosis. *Id.* at 29.

On May 11, 2019, G.E.R. went to Dr. Rivera for disability paperwork and with complaints of "drifting in and out occasionally, forgetfulness" that have "worsened recently" and "shortness of breath." *Id.* at p. 43. Dr. Rivera's description of pertinent findings does not mention vertigo. *Id.* at 45.

In June of 2019, the state agency physician, Kevin Threlkeld, MD, reviewed the medical record finding no medically determinable impairments and noting that claimant had not returned his activities of daily living forms as requested. ECF# 8-4, pp. 15-16. Also in June of 2019, state agency psychologist, Keith Allen, Ph.D., found medically determinable impairments, depressive disorders and trauma and stress-related disorders but concluded no combination of impairments is severe.

*Id.* at 16-17. He commented that the case file lacked information to complete the forms and insufficient evidence to support listing severity. *Id.* On reconsideration, another state agency physician, Donald Shumate, D.O., opined that the medical evidence of record was insufficient to evaluate the claimant's physical issues. Dr. Shumate noted, "Claimant has c/o dizziness and has had a prior diagnosis of BPPV with no ongoing treatment." *Id.* at 25. The second state agency psychologist, Russell Lark, Ph.D., found the following all to be non-severe medically determinable impairments: chronic heart failure, degenerative disc disorder, depression disorders, traumatic and stress disorders, and attention deficit and hyperactivity disorder. *Id.* at 26-27.

After the plaintiff's last insured date, June 30, 2019, the plaintiff did submit a medical statement completed by Dr. Rivera in April of 2020. Her diagnoses included: bipolar, mood disorders, and GAD with panic attacks." ECF# 8-8, p. 148. Under the second question which asked, "Please list your Patient's symptoms, including pain, dizziness, fatigue:", Dr. Rivera listed forgetfulness and unable to drive safely, concentrate and stay focused. *Id.* Dr. Rivera's statement includes no diagnoses related to vertigo or any mention of dizziness. In May of 2020, claimant was seen by a cardiologist at Dr. Rivera's referral. *Id.* at 412. The cardiologist found "no clear etiology" for the near syncope and was not positive for POTS as to justify medication. *Id.* The claimant told the cardiologist that he had an episode of true syncope in 2014, but he has had no full syncope since, only near syncopal episodes. *Id.* at 410. On June

11, 2020, G.E.R. went to the emergency room complaining of dizziness and describing that he had been working "in his hot garage" when he experienced two near syncopal episodes with him falling to the ground. *Id*. at 263. He was diagnosed with atrial fibrillation and admitted for further care.

At the hearing, the claimant testified that when lifting heavier items or standing up, he can experience dizziness and sometimes a racing heart. ECF# 8-3, p. 62. When asked about how often he experienced dizziness, he said two to three times a month, but sometimes more often. *Id*. After the hearing, the ALJ sent medical interrogatories to William Biles, M.D. that required him to review the provided medical record and complete a medical statement on the claimant's ability to do work-related activities (physical) as of no later than June 30, 2019. ECF# 8-9, Ex. No. C23F. Dr. Biles endorsed that he had sufficient medical and other evidence to form an opinion about the nature and severity of the claimant's impairments for the relevant period. *Id*. at 32. He opined that, "[t]here is no objective evidence to establish a diagnosis of Postural orthostatic tachycardia syndrome." *Id*. at p. 32. Dr. Biles included in his opinion that the claimant should climb ladders only occasionally and should never be exposed to unprotected heights. *Id*. at 39 and 40. Dr. Biles did not identify any medical findings to support his assessment of these limitations on ladders or unprotected heights.

**ALJ'S DECISION**

The ALJ found that, "[t]hrough the date last insured, the claimant had

the following medically determinable impairments: atrial fibrillation, degenerative disc disease (DDD), depression, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD)." ECF# 8-3, p. 15. The ALJ, however, did not find the claimant to have an impairment or combination of impairments which were severe, *i.e.*, "that significantly limited his ability to perform basic work activities." *Id.* at 16. The ALJ explained that in reaching this conclusion, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* at 16. She summarized the claimant's testimony from the hearing which included, "that he experiences episodes of dizziness." *Id.* at 17. The ALJ also found from the evidence of record, "that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent for the reasons explained in this decision." *Id.* at p. 17.

    The ALJ disagreed with state agency medical consultants that the medical evidence of record was insufficient and instead found "sufficient evidence within the overall medical evidence of record with which to adjudicate the claimant's application for disability benefits." *Id.* at 19. The ALJ, however, agreed with the consultants' finding "that the claimant experiences non-severe physical impairments." *Id.* She found Dr. Rivera's opinions to be "not persuasive because the

opinions posit that the claimant experiences functional limitations far in excess of clinical observations within the overall medical evidence of record." *Id.* at p. 19. She accepted Dr. Biles' opinion as persuasive in finding no objective evidence of "postural orthostatic tachycardia syndrome," but she rejected it as not persuasive in assessing limitations in physical functioning without basing them on any impairments. *Id.*

**ARGUMENT AND ANALYSIS**

The claimant contends the ALJ erred in not assessing and discussing the diagnoses of vertigo. He criticizes the ALJ's narrative assessment for not mentioning and considering any diagnosis of vertigo. He insists the ALJ's implied conclusion that vertigo is not a medically determinable severe impairment here lacks substantial evidence. Finally, the claimant asks the court to remand the case for the record to be developed and for the sequential evaluation process to continue.

It is the claimant's burden at step two to show a medically determinable impairment or combination of impairments that is severe. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). "[W]hile the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient." *Id.* at 1185 (citation omitted). The agency evaluates whether the claimant has shown a medically determinable impairment based on the following:

> Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. <u>We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).</u>

> After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. § 404.1521 (underlining added). To meet the severity requirement of step two, the medically determinable physical or mental impairment must significantly limit the claimant's physical or mental ability to do basic work activities for a duration of at least 12 continuous months. 20 C.F.R. §§ 404.1509, 1520(a)(4)(ii), 1522(a). The duty is with the claimant to have evidence in the case record that is "complete and detailed enough to allow" a determination on "the nature and severity of" impairments during a period in question. 20 C.F.R. § 404.1512(a)(2). In reviewing agency denials at step two, this court has consistently quoted SSR ruling 85-28 (Medical impairments that are not severe):

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.
> ....
> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

See *Wilkins-Scott v. Berryhill*, 2017 WL 1197650, at *4 (D. Kan. Mar. 31, 2017 (quoting 1985 WL 56856 at *3-*4).

The plaintiff's application for disability did not assert vertigo, (ECF# 8-4, p. 13), and his attorney before the ALJ did not argue vertigo to be a diagnosed

impairment or to be the diagnosed impairment behind the claimant's episodes of dizziness or syncope, (ECF# 8-3, p. 36). Instead, his attorney argued to the ALJ that the claimant's history concerning POTS was related to his reported issues with dizziness and syncope. *Id.*

The claimant's position on appeal seems to have changed. He now argues that his dizziness and fainting was diagnosed as vertigo which the ALJ failed to discuss and address as a medically determinable impairment. As for medical evidence of the claimant's vertigo, he relies exclusively on the treatment records of Dr. Rivera from November of 2015 and December of 2018. The court's summary of this evidence shows Dr. Rivera in November of 2015 recorded an assessment and plan for addressing G.E.R.'s recent episodes of dizziness and falling as vertigo. She also recorded sending him home only with informational sheets for exercises and care for vertigo. Dr. Rivera's notes from that visit do not show she performed or used any clinical diagnostic techniques in reaching any diagnosis of vertigo as a possible cause of G.E.R.'s dizziness and fainting. Instead, her notes state that no physical exam was recorded. She did not prescribe any medication for vertigo. She did not schedule any follow-up appointment or ongoing treatment for vertigo. Instead, the medical records through the date G.E.R. was last insured do not show him ever returning to Dr. Rivera and receiving ongoing treatment or evaluation of vertigo associated with any complaints of dizziness or fainting.

Dr. Rivera's handwritten notes from a December of 2018 visit have a

single, isolated reference to "vertigo," but they do not include any summary of associated symptoms, any reference to a clinical diagnosis, any treatment plan or prescribed medication, or any medical evidence to support a diagnosis of vertigo. This visit also has no record of a physical examination. ECF# 8-8, p. 53. In May of 2019, G.E.R. saw Dr. Rivera for his disability application and for complaints unrelated to dizziness. The records from this visit do not mention vertigo. Finally, Dr. Rivera's medical source statement-physical from May 2020 does not include a diagnosis for vertigo and does not describe symptoms of fainting or dizziness.

When viewed as a whole and longitudinally, the record lacks objective medical evidence showing that the plaintiff had an existing medically determinable impairment of vertigo. There is no evidence of medical testing or clinical techniques used in Dr. Roach's diagnoses of vertigo. There is no evidence of any continuing treatment or evaluation of this condition. Dr. Rivera's initial diagnosis in 2015 seems to be no more than an isolated possible explanation for G.E.R.'s occasional episodes of dizziness and fainting. All subsequent treatment notes from Dr. Rivera confirm she no longer followed this possible explanation in her treatment of G.E.R. Instead, she and others began efforts to diagnose G.E.R.'s episodes of dizziness and fainting as caused by POTS or other cardiology-related reasons. ECF# 8-8, pp. 148, 341. The court agrees with the agency on appeal that Dr. Roach's records fail to establish a medically determinable impairment that is severe and satisfies the agency's twelve-month duration requirement.

The claimant takes issues with the ALJ not discussing Dr. Roach's treatment notes and her initial assessment of vertigo. It is the long-standing rule in this Circuit that, "'[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon as well as significantly probative evidence [she] rejects.'" *Janet Grace O. v. Kijakazi*, No. 20-1228-JWL, 2021 WL 3032913, at *5 (D. Kan. Jul. 19, 2021) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Nor is there any "requirement that the ALJ reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (citation omitted). In reviewing the ALJ's evaluation of the medical evidence, it is enough if the court can follow the ALJ's reasoning and "can determine that correct legal standards have been applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court must rely on its "common sense" and not "insist on technical perfection" in the ALJ's decision even though a more detailed explanation would make judicial review "easier." *Id*.

The ALJ said she considered all symptoms and the extent to which these symptoms could be reasonably accepted as consistent with the objective medical evidence and other evidence. The ALJ mentioned the plaintiff's complaints of dizziness. She credited state agency medical consultants' opinions that claimant experienced only non-severe physical impairments. This finding necessarily

incorporates Dr. Shumate's opinion that, "Claimant has c/o dizziness and has had a prior diagnosis of BPPV with no ongoing treatment." ECF# 8-4, p. 25. Just as the claimant's attorney related the claimant's dizziness to POTS, so the ALJ impliedly addressed the claimant's complaints of dizziness by expressly finding Dr. Biles' opinion to be persuasive that no objective medical evidence established a diagnosis of POTS. The ALJ also found Dr. Rivera's opinions on the claimant's limitations to be unpersuasive in that they were not supported by clinical observations and the overall medical evidence of record. ECF# 8-3, p. 19. For all the reasons stated above, the court finds that Dr. Roach's single isolated assessment of vertigo back in 2015 does not constitute uncontroverted medical evidence or significantly probative evidence requiring more discussion than what the ALJ did here. This is all the clearer because even Dr. Roach did not follow this 2015 diagnosis in her later treatment of G.E.R. Consequently, this single reference to vertigo does not create any serious or direct conflict in the evidence as to trigger a duty to develop the record here. Indeed, the claimant's own attorney before the ALJ did not relate his client's dizziness to any diagnosis other than POTS.

For all the reasons stated above, the court rejects the claimant's argument that the ALJ's decision of no severe medically determinable impairment or combination of impairments is unsupported by substantial evidence because the ALJ failed to mention and discuss Dr. Roach's 2015 diagnosis of vertigo.

IT IS THEREFORE ORDERED that the Commissioner's final decision that

the claimant was not disabled through June 30, 2019, the last date insured, is affirmed.

Dated this 28th day of March, 2022, Topeka, Kansas.

_/s Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge